BLADES v. DEWEY.

(Filed October 11, 1904).

BANKS AND BANKING—*Bonds—Suretyship—Principal and Surety.*

> Where the cashier of a bank is elected "for one year," and the recitals in his fidelity bond refer to his term of office, the surety on his bond is not liable for defalcations committed after the expiration of the term of office to which the bond refers.

ACTION by W. B. Blades against T. W. Dewey, C. Dewey, J. F. Miller and W. H. Borden, heard by *Judge O. H. Allen,* at May Term, 1904, of the Superior Court of CRAVEN County. From a judgment for the plaintiff the defendants appealed.

*Rountree & Carr, D. L. Ward* and *O. H. Guion,* for the plaintiff.
*F. A. Daniels* and *W. C. Monroe,* for the defendants.

CONNOR, J. This action is prosecuted by the plaintiff, trustee of the Farmers and Merchants Bank, for the recovery

of the penalty of a bond executed by the defendants as sureties of Thomas W. Dewey, late cashier of said bank. A jury trial being waived, the Court by consent found the facts material and necessary to a decision of the controversy. The Farmers and Merchants Bank was duly incorporated by chap. 55, Private Acts, 1891. Sections 3 and 4 of said act being the only sections referring to the election and terms of the officers of the bank, are in the following words: Sec. 3. "That the office and place of business of said banking company shall be in the city of New Bern, State of North Carolina, and the officers shall consist of a president, vice-president, cashier and teller, and a board of not less than five nor more than nine directors, who shall be elected annually by the stockholders; the directors so elected to choose the officers aforesaid, and shall require the president, the cashier and the teller each to give bond, with approved security, for the faithful performance of their respective duties. Sec. 4. That it shall be the duty of the board of directors and they are hereby fully empowered to make rules, regulations and by-laws for the government of said corporation and for the conduct of its business; also to fix the salaries of its officers and to fill vacancies in the board of directors. Said board of directors shall be chosen by a majority of the corporators named herein at the first meeting to be called by them, which said board of directors shall hold office for one year and until their successors are duly elected, a majority of said board to constitute a quorum for the transaction of business." That under said act the said Farmers and Merchants Bank was duly organized on March 3, 1891, and a board of directors elected by the stockholders, and that at a meeting of the said board of directors, held on the 3d day of March, 1891, the defendant was elected cashier for one year and his bond fixed at the sum of twenty thousand dollars. That on the 29th day of April the bond was, at a meeting of said board, presented and accepted, and thereafter

136——12

no other bond was required or given during the continuance in office of said cashier. The parts of said bond material to the decision of this appeal are: "Whereas, the above bounden Thomas W. Dewey has been chosen and appointed cashier of the Farmers and Merchants Bank, by reason whereof he will receive or have control, or be charged with money, property or things of said bank and others: Now the condition of this obligation is such that if the said Thomas W. Dewey, his executors or administrators, shall well and truly serve the said bank as such officer during his continuance in office, and well and truly perform and discharge all his duties as such officer, and shall at the expiration of his said office, or whenever sooner thereto required upon request to him or them made, shall make or give unto said bank a just and true account of all moneys." * * * That thereafter at a meeting of the board of directors of said bank held on the 26th day of April, 1892, the said Thomas W. Dewey was elected cashier for the ensuing year, and it was ordered that the bonds of the officers elected at said meeting be fixed at the same amount. That regularly each year thereafter the said Thomas W. Dewey was elected by the said board of directors as cashier for the ensuing year until and including the year 1903. There was no defalcation or breach on the part of said Dewey as such cashier until the year 1903. That during said year there was a defalcation by said Dewey to an amount exceeding the penalty of said bond. There was no by-law or resolution fixing the term of office of said cashier. The said bank failed and the plaintiff was appointed trustee. His Honor rendered judgment that defendants were liable on said bond and they excepted and appealed.

The defendants insist that by section 3 of the charter the terms of the officers, including the cashier, are made annual. This contention is seriously controverted by the plaintiff, he

insisting that the words "elected annually" are confined to the board of directors. The question is certainly not free from difficulty. Assuming, however, that, as contended by the plaintiff, the term for which the cashier was to be elected is left open by the charter, to be fixed by the directors, it would seem that the fact, as found by the Court, that at their first meeting and probably before any by-laws were adopted, they elected the defendant Dewey "for one year," confined his term to that period certainly, until changed by resolution or by-law. In respect to the liability of the sureties to the bond in suit, no action of the trustees thereafter changing the term, or failing to require a new bond, could enlarge or extend the time for which they could be held answerable. The board seem to have so regarded the matter, because just one year after the first election they re-elected the defendant "for the ensuing year," and ordered "that the bond be fixed at the same amount." This language excludes the idea that they regarded the defendant Dewey as continuing in office under the first election, or that the bond given covered the next term. They elected him annually thereafter, ordering that the "bond remain as heretofore." This language might possibly give rise to some doubt, but certainly that used at the time of the second election could not do so. We concur with the plaintiff's counsel that no question of usage or custom can arise in this case. The terms of the contract were fixed at the opening of the bank and nothing done thereafter by the directors could change or affect them in respect to the question before us. What then did the defendants contract to do? It may be well enough to say at the outset that we do not assent to the suggestion that it was not competent for or within the power of the directors to fix the term for a longer time than their own term. We see no good reason why, if not restrained by the charter, they may not elect for a number of years, or to

hold at their pleasure. It is frequently said that sureties are the favorites of the law and their obligation is *strictissimi juris*. This is true, but we think the principle is correctly stated by *Martin, J., in Bank v. Young,* 161 N. Y., 23: "The liability of a surety is measured by his agreement, and is not to be extended by construction. His contract, however, is to be interpreted by the same rules which are applicable to the construction of other contracts. The extent of his obligation must be determined by the language employed, when read in the light of the circumstances surrounding the transaction. Hence, when the question is as to the interpretation and meaning of the language by which a party has bound himself, there is a difference between the contract of a surety and that of a principal or other party sustaining a different relation. It is when the intention of the parties has been thus ascertained that the principle of *strictissimi juris* applies and then it is that the Courts gained the rights of the surety and protect him against a liability which is not strictly within the terms of his contract." Was the term for which defendant Dewey was elected at the time, and with reference to which the bond was given, annual? In the absence of a provision in the charter, or any by-law or resolution fixing the term, there is but one possible source for us to go for light by which to answer the question—the terms of the appointment. This the Court finds to have been "for one year." We must assume, in the absence of any suggestion to the contrary, that this was ascertained by referring to the minutes or records of the corporation. This is the usual way in which the business of a corporation is conducted. We must assume that the term for which he was elected was known to the sureties, and that they contracted with reference to such appointment. It would be doing violence to common experience and observation to do otherwise. The bond recites: "That whereas, the above

bounden Thomas W. Dewey has been chosen and appointed
cashier of the Farmers and Merchants Bank," etc.   Every
contract of suretyship has reference to and is based upon
some contract made, or obligation assumed, by the principal
obligor, and the liability of the surety is measured by the
obligation of the principal.   "The bond of all officers remains
in force as a continuing obligation only during the period
for which he legally holds under his election.   His re-elec-
tion at the end of this period and his entry upon a second
term of office, though no actual gap intervene, do not oper-
ate to revive or keep alive his bond."   1 Morse on Banks,
sec. 27.   This is all clear enough, and there would be no
difficulty in this case but for the fact that the bond simply
recites that Dewey has been "chosen and appointed" with-
out any reference to the time or term for which he has been
so chosen, while the condition of the bond is that he shall
well and truly serve the said bank as such officer "during
his continuance in office."   The defendants say that this lan-
guage is to be understood as referring to his continuance in
office by virtue of said appointment.   The plaintiff insists
that the condition must be given a very much larger mean-
ing and application.   That in the absence of any provision
in its charter, by-laws or resolution fixing the term, or any
express recital referring to the term of appointment, the
parties must be understood as contracting to make good any
default by their principal at any time during his actual
continuance in office.   It is conceded by the plaintiff that
if the recital had in express terms referred to or set out an
election "for one year," such recital would have controlled
and limited the language of the condition.   This principle
is well settled by a long current of decisions from the time
of *Lord Chief Justice Hale.*   In *Lord Arlington v. Mer-
ricke,* 3 Saunders, 403, it was said: "That the condition shall
refer to the recital."   One Jenkins had been appointed dep-

uty postmaster for six months by the plaintiff, who was
Postmaster-General, and entered into bond with the defend-
ant as surety, reciting the appointment "for the term of six
months following," with the condition that he would well
and truly perform, etc., "for and during all of the time that
he shall continue deputy postmaster." The principal ob-
ligor continued in office after the expiration of six months
and breached the condition of the bond. The Court held
that the surety was liable. *Hale, C. J.,* says: "And so here
the words 'during all the time' shall be intended but only
during said six months recited in the bond." This, Saun-
ders says, has been considered a leading case on this sub-
ject ever since. *Waterworks v. Atkinson,* 6 East., 507; *Ba-
ker v. Parker,* 1 D. & East., 287. In these cases the recital
set forth the term of appointment. They aid us, therefore,
only as sustaining the principle that the recital will control the
condition. There are a class of cases wherein the statute
fixes the term, in which it is held that although the term is
not recited and the condition is general the language will be
construed to refer to the term as fixed by the statute. In
*Peppin v. Cooper,* 2 B. & Ald. (4 Eng. Com. L., 577), the
office of Collector of Rents was fixed by act of Parliament
at one year. *Abbott, C. J.,* said: "It is true that the words
at all times hereafter in the condition of the bond would,
taken by themselves, extend the liability beyond that period.
But these words must be construed with reference to the
recital and the nature of the appointment there mentioned,
and the recital is that Warren, together with Peppin, had
been appointed collectors under said act of Parliament.
Now the nature and duration of the office must be learned
from the act of Parliament itself, for if the statute makes
it an annual office it is unnecessary to state that fact, either
in the bond or the pleadings." *Hassell v. Long,* 2 Maule
and Sel., 363. The plaintiff says that this case comes within

neither of these classes, and this is true. In *Bank v. Chick-ering*, 3 Pickering, 335, *Parker, C. J.*, referring to the contention that the condition is controlled by the recital, says: "We do not doubt the soundness of the principle. *   *   * In some cases, when the words would extend to an indefinite period, but when by the recital it appeared that the office was annual, it has been held that the obligation should be understood as referring to an office so limited. We should go even further, and say that when it appears by the records of a corporation that the office, by their regulations, is an annual one, the bond should be so restricted, and all this is founded on the intent of the parties." It was held in that case that there was nothing in the record to show that the office was annual and nothing to make the sureties suppose that it was limited to one year. The general principle is recognized, and the *Chief Justice* says that it will apply when it appears by the records of the corporation. The facts of the case did not come within the rule. The plaintiff relies also upon *Bank v. Root,* 2 Met., 532. The opinion is written by *Chief Justice Shaw,* and is certainly entitled to the most respectful consideration by reason of his great learning and eminent ability. He says: "It is manifest by the terms of this condition that the obligation is unlimited in time, and undertakes for the faithful conduct of the cashier as long as he continues in office. But it is a well-settled and now familiar rule of law that general words in the obligation may be limited and restricted by the recital, by the subject, or by facts which when applied to the language show that it must have been so understood by the parties." After laying down this general proposition he continues, as if by way of illustration: "As when it is recited that one has been appointed to an office for a limited time, and there is a stipulation for a general performance, the law will look to the recital and limit the stipulation for

a general performance to the time for which it is recited he is chosen." We cannot suppose that the *Chief Justice* intended by the illustration to narrow or limit the general principle so that it should only apply to cases coming strictly within the illustration. To so interpret him would be to limit the general principle in which he expressly says that the restriction of the condition may be brought about by the recital, by the subject, or by facts which when applied to the language show it must have been so understood by the parties. The fact that the principal was appointed "for one year," it seems to us, is as potent in controlling the condition as would be the recital of the fact, because it is the fact which the parties had in view when they contracted. The case of *Bank v. Root* was decided upon the general statute in force in Massachusetts, regulating banks and prescribing the terms of cashiers. The real point decided is that the language of the general statute will control the election by the board "for the ensuing year." The case of *Westervelt v. Mohsenstecher,* 76 Fed. Rep., 118, 34 L. R. A., 477, was decided upon the same ground—the National Banking Act prescribing the terms for which cashiers are elected. The Massachusetts Court expressly recognizes this in *Trustees v. Dean,* 130 Mass., 242. In that case the plaintiffs elected Richardson treasurer "for the ensuing term of three years." He gave bond with general recital. At the end of the term he was re-elected, and gave no new bond, the plaintiffs ordering that "the bond of the treasurer be the same as before." In an action brought for a breach committed after the expiration of three years, it was held that the sureties were not liable, the Court saying: "There is no statute which makes the office a continuing one, and the reasoning which led to the decision in *Bank v. Root* is not applicable to this case. * * * When the defendants signed the bond in suit, the subject matter of the contract was an office of a

fixed and limited term.  Their stipulations apply only to
the limited office, and as there is no agreement to continue
their liability in case of the re-election of the same officer,
they are not responsible for any defalcations happening
after their principal, by a re-election, entered upon a new
office or term of office."   *O'Brien v. Murphy,* 175 Mass.,
253, 78 Am. St. Rep., 478; *Bank v. Ostrander,* 165 N. Y.,
430.  While none of these cases are on "all fours" with ours,
we find nothing said in any of them which confines the ap-
plication of the general principal to cases where the term
is fixed by statute, charter, by-law or resolution, or which
excludes its application to a case wherein the term of ap-
pointment at the time it is made is fixed to a definite period
and the recital is general.  In a note to Morse on Banking,
sec. 27 (4th Ed.), the law is thus stated: "Though the bond
does not recite the term of the office or agency, if it be of
limited duration by general statute, charter, by-law *or terms
of appointment* (italics ours), the parties are still supposed
to contract with reference to the limited term, and the sure-
ties will not be held answerable for the misconduct of the
principal beyond that term, upon a new appointment, even
though the words of the bond are that they shall be responsi-
ble for the principal "at all times, or for any time here-
after."   Among the cases cited to sustain this proposition
are *Kitson v. Julian,* 82 Eng. Com. L. Rep., 853.  In that
case the bond recited that Julian had been appointed clerk to
the Torquay Gas Company and had agreed to give bond.  No
term was named in the recital.  The condition was that the
said Julian should well and truly, etc., "so long as he should
continue to hold said office."   The bond was put in suit upon
an alleged breach.  The defendant sureties, by way of plea,
averred that the appointment was for one year from and
after Lady Day, 1850, and no longer.  That Julian per-
formed, etc., during said time.  Plaintiff, by way of repli-

cation, said that by and with the consent of the defendants and the said company, the said Julian remained in the employment of said company after the said time, and that during such last-mentioned period there was a breach. Defendants demurred to the replication. The cause was argued upon the pleadings. *Lord Campbell, C. J.,* said: "The liability continues after the expiration of the year if that was the intention of the parties. In *Lord Arlington v. Merricke,* the Court seemed to have considered that the parties intended otherwise. Many decisions show that when the principal is made liable for a given time only the liability of the surety is confined to that time. We have here a positive averment that the appointment was for one year and no more. The condition recites the appointment, the extent of which is shown by the plea, and we must assume that it was known to both parties what that extent was." The judgment was concurred in by all of the Judges. In *Hassell v. Long, supra, Ellenborough, C. J.,* said: "All the cases since *Lord Arlington v. Merricke* and *St. Saviour v. Bostick,* 2 N. Rep., 175, have narrowed the construction of conditions of this sort to the actual term of the officer." *Bank v. Odd Fellows,* 48 Penn., 446; *Thomas v. Summey,* 46 N. C., 554; *Welch v. Seymour,* 28 Conn., 387; 5 Cyc., 773-4; *Munford v. Rice,* 6 Mun., 87. We do not think that the case of *Bank v. Seidenslicker,* 92 N. W. (Iowa), 362, conflicts with this view. As sustaining the construction which we have adopted, it may be noted that in a number of cases the condition of the bond has been so drawn as to include breaches committed during other terms for which the officer may be elected. *Oswald v. Mayor,* 5 House of Lords' Cases, 856; *Bank v. Young,* 161 N. Y., 23. We do not deem it necessary to concur in all that is said in *Bank v. Briggs,* 60 Vt., 12; 37 L. R. A., 845; 60 Am. St. Rep., 922. Because of the importance of the principle involved and the very able arguments and briefs

by counsel we have endeavored to set out at more length than is usual our views and the result of our examination of the authorities. Holding as we do that the condition in the bond is controlled and restricted by the recital, and that this refers to the terms of the appointment "for one year," we are of the opinion that the sureties are not liable for defalcations committed after the expiration of the first term, April 29, 1892. Judgment should have been so rendered. To the end that such judgment may be entered below, let it be certified that there is

Error.